## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTWON BROWN, | : | CIVIL ACTION NO. |
| Petitioner, | : | 3:16-CV-759 (JCH) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | DECEMBER 1, 2016 |
| Respondent. | : | |

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1)

Petitioner, Antwon Brown ("Brown"), currently incarcerated at the Willard-Cybulski Correctional Institution in Enfield, Connecticut, filed a petition for habeas corpus pursuant to section 2254 of title 28 of the United States Code, challenging his conviction for conspiracy to commit robbery.  See Petition (Doc. No. 1) at 2.  The respondent, the State of Connecticut, contends that Brown is not entitled to federal habeas relief on any ground for relief asserted in the Petition.  See Resp't's Mem. (Doc. No. 11) at 2.  For the reasons that follow, the court concludes that the Petition should be denied.

## I.    PROCEDURAL BACKGROUND

Brown was the defendant in two separate criminal cases in the Connecticut Superior Court for the Judicial District of Waterbury.  Each case involved the robbery of one business.  The court granted a motion to consolidate the two cases, and the state filed a substitute information charging Brown with two counts of conspiracy to commit robbery in the first degree.  See State v. Brown, 31 A.3d 434, 436 (Conn. App. 2011).

Before the trial commenced, Brown moved to suppress a statement he provided to the police.  See Amended Motion to Suppress (in Doc. No. 11-2) at 31–38.  The trial

court denied the motion immediately following a hearing.  See Second Court Action Log (in Doc. No. 11-2) at 4; Trial Court Ruling (in Doc. No. 11-2) at 41.

The jury found Brown guilty on both counts.  Brown, 31 A.3d at 435.  On February 9, 2010, the court, sua sponte, ordered both parties to address at sentencing whether the two conspiracy convictions should be merged.  Id. at 436.  On March 26, 2010, the court considered the parties' arguments and declined to merge the two convictions.  The court concluded that Brown's confession contained no evidence that the men agreed to rob both businesses at the same time.  Id.  The court sentenced Brown to two concurrent terms of imprisonment of ten years followed by ten years of special parole.  Id.

Brown challenged his conviction on direct appeal on the ground that considering the two counts of conspiracy to commit robbery as separate offenses violated his right to be free from double jeopardy.  The Connecticut Appellate Court affirmed the conviction, and the Connecticut Supreme Court denied certification without comment. Id. at 435, cert denied, 34 A.3d 396 (Conn. 2012).

On February 8, 2011, while his direct appeal was pending, Brown filed a state habeas action.  The Amended Petition in that case, filed by appointed counsel, alleged that trial counsel was ineffective in several ways.  See State Case Amended Petition (in Doc. No. 11-10) at 36–37.  Following a hearing, the state court denied the State Case Amended Petition.  Brown v. Warden, No. CV114003967, 2013 WL 6171366 (Conn. Super. Ct. Oct. 31, 2013) at *5.  The habeas court also denied certification to appeal. See Appeal File (in Doc. No. 11-10) at 59.

Despite this denial, Brown, through appointed counsel, appealed the denial to the

Connecticut Appellate Court.  On March 17, 2015, the Connecticut Supreme Court dismissed the appeal in a per curiam decision.  Brown v. Commissioner of Correction, 109 A.3d 1058 (Conn. App. 2015).  On June 10, 2015, the Connecticut Supreme Court denied certification to appeal.  Brown v. Commissioner of Correction, 115 A.3d 1105 (Conn. 2015).

Brown commenced this action by Petition dated May 17, 2016.

## II.   FACTUAL BACKGROUND

The Connecticut Appellate Court determined that the jury reasonably could have found the following facts.

On November 11, 2008, Brown's friend, Lonnie Cross, called Brown and told him that he was coming to pick him up.  When Cross picked Brown up at Brown's home, Adam Mines, another friend, was in the front seat of Cross' car.  Cross drove to a convenience store and told Mines and Brown that he was going to rob the store.  Mines and Brown waited in the car when Cross entered the store.  Brown, 31 A.3d at 435.

Cross returned to the car a few minutes later and reported that "'everything was good.'"  Cross drove to a liquor store.  He parked the car on a nearby street and told Mines and Brown that he was going to rob the liquor store.  Mines agreed to go with Cross.  They told Brown to wait in the driver's seat and keep the car running.  He did so.  Cross and Mines left the liquor store a few minutes later.  Brown drove away as soon as they were in the car.  Id.

All three men were apprehended later that night.  Brown was taken to the police station for questioning.  Brown provided a voluntary statement detailing his involvement in the two robberies.  Immediately after he gave the statement, Brown was arrested.  Id.

3

at 435–36.

## III.   STANDARD OF REVIEW

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002).  Clearly established federal law is found in holdings, not dicta, of the U.S. Supreme Court at the time of the state court decision. White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  Second Circuit law which does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief.  See Renico v. Lett, 559 U.S. 766, 778 (2010) (holding that court of appeals erred in relying on its own decision in a federal habeas action); see also Kane v. Garcia Espitia, 546 U.S. 9, 10 (2005) (absent a Supreme Court case establishing a particular right, federal court inference of right does not warrant federal habeas relief).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case.  The state court decision must be more than incorrect; it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011); see also Burt v. Titlow, 134 S. Ct. 10, 15 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction"); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (objective unreasonableness is "a substantially higher threshold" than incorrectness).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state court rulings where constitutional claims have been considered on the merits and which affords state court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet).  The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them[,]" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record.  Smith v. Mann, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

5

In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Pinholster, 131 S. Ct. at 1398. Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

## IV.   DISCUSSION

Brown challenges his conviction by claiming ineffective assistance of counsel and prosecutorial misconduct. See Petition at 9, 11. First, Brown challenges the prosecutor's use of a letter Brown had written to the pretrial judge. See id. at 9. Second, Brown contends that his lawyer referred to his signed statement as a confession instead of a false and unknowing statement, failed to prepare him to testify, and failed to object to the prosecutor's use of the letter during cross-examination. See id. at 11.

### A.   Ineffective Assistance of Counsel

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, the petitioner must demonstrate first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that the deficient performance caused prejudice to him. Id. at 687–88. Counsel is presumed to be competent. The petitioner bears the burden of demonstrating unconstitutional representation. United States v. Cronic, 466 U.S. 648, 658 (1984). Flawlessness is not required. Counsel must have acted reasonably under prevailing professional norms.

6

Hinton v. Alabama, 134 S. Ct. 1081, 1088 (2014).  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.  Rompilla v. Beard, 545 U.S. 374, 381 (2005).

To satisfy the prejudice prong of the Strickland test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial.  Strickland, 466 U.S. at 694.  To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice.  Id. at 700.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

The court considers the last reasoned state court decision in evaluating a section 2254 petition.  Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).  Here, the last reasoned decision was issued by the Connecticut Superior Court.  See Brown, 2013 WL 6171366.  In that decision, the state court applied the Strickland standard.  See Brown, 2013 WL 6171366 at *1–2, 4.  As the state court applied the correct legal standards, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).

Accordingly, this court must determine whether the state court decision is a reasonable application of Strickland.  The question this court must answer "is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Harrington v. Richter, 562 U.S. 86, 105 (2011).  Because the Strickland standard is general, the federal court affords the state court "more latitude to reasonably determine that a defendant has not satisfied that standard."  Knowles v. Mirzayance, 556 U.S. 111,

7

123 (2009).

    1.    <u>Additional facts</u>

The following additional facts relate to Brown's claims that trial counsel was ineffective.  At trial, Brown presented an alibi defense.  <u>See</u> Trial Tr. (Jan. 21, 2010) (Doc. No. 11-18) at 30–37.  The state court canvassed Brown before he testified. Brown stated that he had voluntarily decided to testify, had discussed his decision with his attorney, and was satisfied with counsel's advice.  He stated that he understood that he had a constitutional right to decide whether or not to testify and that, if he chose to testify, the prosecutor could cross-examine him.  Brown confirmed his desire to testify several times during the canvass.  <u>See</u> <u>id.</u> at 22–25.

Brown testified that, on the day of the robberies, he did not go to work; he was at home with his fiancée, Meghan Cochran, and her daughter.  <u>Id.</u> at 30–31.  Brown testified that, between 5:00 p.m. and 6:00 p.m., Cross took them to bring Cochran's daughter to her grandmother's house and then brought Brown and Cochran home.  <u>Id.</u> at 32–34.  Brown testified that he remained at home until Cross called around 8:30 p.m. and asked if Brown wanted to join him and some friends, Adam Mines and Dashaun Cook, for a drink.  <u>Id.</u> at 34–35.  Brown testified that he agreed and Cross picked Brown up about 9:00 p.m.  <u>Id.</u> at 35–36.  Cochran corroborated Brown's account, stating that she was with him from the time she woke up in the morning until he left to go drinking with Cross around 9:00 p.m.  <u>Id.</u> at 6–7.

Brown testified that, when he got into Cross' car, a white Hyundai, he saw two bottles of Hennessey in the back seat.  According to Brown, Cross did not explain how he had gotten the liquor or what he had been doing since 6:00 p.m.  <u>Id.</u> at 36.  Brown

testified that Cross, Mines, and Brown drove to Cook's house.  He testified that they left

Cross' car there because Cross said he did not want to drink and drive.  He testified that

the four drove in Cook's car to Cross' house so Cross could change his clothes.  Brown

testified that he heard Cross arguing with his girlfriend.  According to Brown, when

Cross rejoined the men, he said that he needed to return to Cook's house to retrieve

Cross' car.  Brown testified that Cross drove his car home, and the others followed in

Cook's car.  Id. at 37.

When Cook entered the parking lot for Cross' building, a police car pulled in

behind him.  Cook told Mines and Brown that he had drugs in the car and tried to drive

away.  Id. at 37–38.  The police arrested all four men and took them to the police

station.  Id. at 43–45.  Brown testified that he asked to leave several times and asked

for an attorney.  Id. at 44–46.  Two police officers questioned Brown.  They told him they

had found his drugs in the front seat of the car and that he could not leave.  Id. at 47–

48.  Brown stated that the officers threatened him with drug charges.  This worried

Brown because he had previous narcotics convictions.  Id. at 49.  Brown testified that

the officers promised Brown that he could leave if he signed a confession that followed

"the police version of events."  Id. at 50–51.  Brown testified that the officers typed the

statement and gave it to Brown to sign.  He testified that, at first, he refused.  He

testified that he told the officers that Cross had dangerous friends and that something

bad would happen to him if he signed a document containing false statements about

Cross.  Brown testified that he signed the statement after the police officers promised to

protect him.  According to Brown's testimony, he never read the statement.  Id. at 51.

On cross-examination, Brown testified that the police officers never explained his

rights before questioning him and that they forced him to initial the waiver of rights form. Id. at 57–60.  Brown also testified that one officer hit him with a water bottle and kneed him in the side.  Id. at 88–89.  Brown testified that he never told the police officers that he had an alibi because he did not want them to harass his fiancée.  Id. at 102–04.

At the habeas hearing, Brown pursued only his claims that trial counsel was ineffective because he (1) referred to the signed statement as a confession even though the defense theory was that the statement was an unknowing and false statement, not a confession; (2) did not adequately prepare Brown to testify at trial; (3) did not object when the prosecutor cross-examined Brown about a letter he wrote to the judge; and (4) did not introduce the letter into evidence or question Brown about the contents of the letter and his reason for writing it.  See Habeas Tr. (Doc. No. 11-22) at 3 (stating that Brown is proceeding on only the claims in subparagraphs (d), (e), (g), and (h) of paragraph 10 of the State Case Amended Petition); State Case Amended Petition ¶10(d),(e),(g),(h).  Three witnesses testified at the habeas hearing: trial counsel, Brown, and an expert witness.  See Habeas Tr. at 5, 69, 101.

Trial counsel testified that, during his first conversation with Brown, he learned about the signed statement.  Id. at 15.  During discovery, counsel learned that the state had substantial evidence against Brown.  Id. at 16–17.  Although Brown denied in the statement that he knowingly participated in the first robbery, Cross had identified Brown as the getaway driver for both robberies.  Id. at 51–53.

Brown had previous narcotics convictions and had been incarcerated for two-and-one-half years.  He asked counsel to try to obtain a favorable plea offer on the robbery charges, which carried a maximum sentence of forty years imprisonment.

Against counsel's advice, Brown rejected both an initial offer of twelve years, suspended after six years, and a later less favorable offer.  Id. at 17, 23, 54–57.

Trial counsel admitted that he referred to Brown's signed statement as a confession.  Id. at 61.  While doing so, however, he emphasized the coercive techniques Brown claimed were used to obtain the statement and the fact that the Waterbury Police Department did not videotape confessions.  See Trial Tr. (Jan. 21, 2010) at 51–53; Trial Tr. (Jan. 22, 2010) (Doc. No. 11-19) at 28–29, 33–34.  Counsel also referred to the statement as an "alleged" confession.  Trial Tr. (Jan. 22, 2010) at 35.  Trial counsel testified at the habeas hearing that he did not know whether the name attached to the document mattered to the jury.  In his view, the context was the important issue.  Habeas Tr. at 53, 61.

Regarding whether he adequately prepared Brown to testify, trial counsel testified that he met with Brown at the correctional facility at least twice and spoke with him on the phone several times.  Id. at 18–19.

Trial counsel testified that, prior to the hearing on Brown's motion to suppress, trial counsel testified that he told Brown the benefits of testifying, that he could explain why he felt he was forced to sign the document, and the disadvantage, that anything he said would be admissible at trial.  Id. at 28–29.  Counsel also explained that Brown could choose to testify at the suppression hearing but not at trial.  Id. at 28.  Brown discussed these options with counsel and decided not to testify at the hearing.  Id.

Between the suppression hearing in October 2009 and the trial in January 2010, counsel testified that he reviewed the evidence and spoke with Brown and Cochran several times to discuss their testimony.  Id. at 29–30.  He testified that he provided

Brown guidelines for his testimony and emphasized that Brown should tell the truth. Counsel stated that he told Brown to answer the question asked and to say if he did not understand or hear a question.  Counsel stated that he also advised Brown that "less is more" when answering questions on cross-examination.  According to counsel, they reviewed the facts of the case and Brown's version of events.  Id. at 31.  Counsel testified that he prepared his questions for direct examination based on his discussions with Brown and reviewed these questions with Brown prior to trial.  Id. at 32, 38–39.

Trial counsel felt that direct examination went well.  He thought Brown sounded candid and likeable.  Id. at 62.  According to counsel, any problems occurred during cross-examination.  Id. at 62–63.  Brown stated that the police had physically abused him while obtaining his statement, something he had never told trial counsel.  Brown told trial counsel that he had signed the statement because the police had promised to help him with any drug charges.  Id. at 63.

Brown wrote a letter to the pretrial judge in September 2009, about four months before the trial, without his attorney's knowledge.  Id. at 39–40, 58–59.  The court notified counsel for both parties about the letter and provided them copies.  Id. at 40.  Trial counsel testified that, when the prosecutor referred to the letter during cross-examination, he decided not to object for strategic reasons.  Although the letter described positive qualities, it also contained admissions against interest which could be used against Brown.  Thus, counsel did not want the letter in evidence.  In addition, counsel wanted the jury to focus on Brown's version of events—that the others robbed the stores and then came to him to purchase drugs—not the letter which included nothing about the night of the robberies.  Id. at 40–44; see also Brown's letter (Doc. No.

11-10) at 64–65.

Brown testified at the habeas hearing that he met with trial counsel before rejecting the first plea offer and told counsel the entire story, including his alibi and the methods, including physical abuse, that the police used to get him to sign the inculpatory statement.  See Habeas Tr.  at 72, 96.  Brown testified that counsel met with Brown once during the summer at the correctional facility and then did not see him until October 2009.  See id. at 73–75.  Brown testified that counsel did not respond to Brown's telephone calls.  See id. at 75.

Brown testified that he decided to write directly to the judge because he could not contact his attorney and wanted a better plea deal.  He had heard from friends that the judge was fair, so Brown decided to submit a character reference to the judge.  Id. at 77, 93–94.  The purpose of the letter was not to discuss the facts of the case.  Id. at 81.

Brown testified that, on the day of the hearing, counsel advised him that he should not testify at the suppression hearing because it would make him look bad if he decided to testify at trial.  Brown stated that he wanted to testify both at the hearing and at trial, but decided to follow counsel's advice and did not testify at the hearing.  Id. at 78.

Brown stated that counsel did not prepare him to testify at trial, aside from speaking briefly to Brown while court was in session.  See id. at 80.  He testified that he did not see counsel after the suppression hearing until the day of trial and did not speak with counsel about testifying until right before he was called to the stand.  Brown testified that counsel did not review with Brown the questions he planned to ask on direct examination and did not explain what Brown should expect during cross-

examination or what to do if an objection were made.  Id. at 79–83, 97.  Brown conceded that he was able to testify and explain to the jury that the police had coerced a false confession.  Id. at 96.

Brown also presented the testimony of an expert at the habeas hearing.  The expert stated that he had reviewed the transcripts of the trial and suppression hearing and various other documents from the case.  Id. at 103–04.  The expert stated that the defense lawyer should have used the word "statement" rather than "confession" because the connotation of the word confession is more helpful to the prosecution than to the defense.  Id. at 118–19.

The expert stated that counsel should develop a relationship with his client and challenge his version of events at multiple times based on new information obtained from the investigation.  The expert also explained various advice that should be given to the client to prepare him to testify.  Id. at 104–05.  The expert opined that Brown should have been advised to testify at the suppression hearing regarding the promises and abuse.  He stated that the testimony could only have been used at trial for impeachment purposes and would not have been admitted at all if Brown chose not to testify.  The expert thought that, if he had testified at the suppression hearing, Brown would have been better prepared to testify at trial and trial counsel could have used the suppression hearing as a test to determine whether Brown should testify at trial.  Id. at 106–08.

Regarding the letter, the expert stated that a reasonable attorney would have moved to bar use of the letter on relevance grounds and, once the letter was used, moved to have it admitted into evidence.  Id. at 113–15.

2.    Analysis

The habeas court decided Brown's first claim, regarding the reference to his statement as a confession, on the prejudice prong of the Strickland standard.  The court reviewed the trial transcripts and concluded that Brown's trial testimony was not credible.  Brown, 2013 WL 6171366, at *3.  The court stated:

> having had the opportunity to listen to the petitioner testify to all of the claims above in person during the habeas trial only served to affirm for this Court what the jury at the criminal trial likely found, which was that the petitioner's claims lacked any scintilla of credibility.

Id. at *4.  The habeas court stated that Brown had failed to prove that counsel's misrepresentation of the statement prejudiced Brown.  See id. at *3.  Brown's problem was his contradictory and fabricated claims compared to the overwhelming evidence presented by the prosecution.  The court noted that Brown's claims of police intimidation and abuse were unsupported by any credible evidence and found credible trial counsel's statement that he had never heard of these claims until Brown revealed them on cross-examination.  The habeas court also noted that Brown had not filed any complaint with the police department or the court regarding the alleged abuse and threatening conduct.  Thus, the habeas court determined that the claims were fabricated by Brown immediately before or during his testimony.  Id. at *3.

In addition, in finding Brown's testimony that he had not read the statement not credible, the habeas court noted that Brown had initialed every paragraph of the statement and that the statement accurately described the clothing Cross was wearing during the robberies, clothing different from what he was wearing when he was arrested, and included details Brown would not have known if he were not present.  In

addition, the habeas court noted that Brown testified that he was crying right before he signed the statement because the police were putting his life in danger, but denied knowing the content of the statement.  The habeas court described as "unbelievable" Brown's explanation for how Brown was aware that the statement implicated Cross without having read the statement.  The habeas court found Brown's explanation—that he just assumed that the police were using the statement to get him to implicate Cross in something—not believable.  The habeas court also found not credible Brown's testimony that he thought the police were showing him photographs of his co-conspirators to see if he knew them, not to identify them as participants in the robberies. The habeas court noted that a review of Brown's trial testimony showed that, whenever he was asked a similar question, he embellished his response to add facts favorable to himself.  Id. at *3–4.  The credibility findings of the state court are given deference.  Rice v. Collins, 546 U.S. 333, 338 (2006).

The only evidence Brown presented to demonstrate prejudice was his own testimony and the testimony of his expert.  In addition to disagreeing with various tactics that trial counsel took, the expert specifically opined that trial counsel's handling of the letter was "prejudicial."  See Habeas Tr. at 115.  The habeas court concluded, however, that Brown had failed to prove any probability of a more favorable outcome at trial if counsel had not referred to his statement as a confession because his fabricated and not credible statements were insufficient to overcome the overwhelming evidence against him.  Brown, 2013 WL 6171366 at *3–4.  The analysis of the habeas court on this claim is a reasonable application of the Strickland standard to the facts of the case.

The habeas court also found Brown's testimony regarding the second claim—

that trial counsel failed to adequately prepare him to testify—lacked credibility.  The habeas court found credible trial counsel's testimony that he prepared questions for Brown and met with Brown to prepare and discuss his testimony.  Brown, 2013 WL 6171366 at *4.  The court found Brown's trial testimony not credible and that any additional information Brown claimed should have been presented would not have affected the outcome of trial.  Id.  Thus, the habeas court concluded that Brown had failed to prove that trial counsel's performance was deficient or that Brown was prejudiced as a result of counsel's performance.  Id.  The habeas court's crediting trial counsel's testimony over that of the expert is supported by the record.  Although the expert faulted trial counsel for failing to introduce on direct examination that Brown was a convicted felon and that he had tried to improve himself while incarcerated, the trial transcript reveals that trial counsel did those things.  See Habeas Tr. at 111–12 (expert testifying drug convictions first mentioned on cross-examination and counsel should have had Brown talk about improving himself in prison); Trial Tr. (Jan. 21, 2010) at 40–42 (Brown admitting convicted felon and explaining what he learned and did in prison, on direct examination).

Again, the state habeas court's credibility determination is entitled to deference.  See Scott v. Conway, No. 08-CV-0058 (MAT), 2010 WL 2735056, at *4 (W.D.N.Y. July 9, 2010); See also Rice, 546 U.S. at 338–39, 341–42 (holding that a federal habeas court must defer to state trial court's factual finding, such as its credibility determination); Channer v. Brooks, 320 F.3d 188, 195 (2d Cir. 2003) (holding that state court's fairness finding in deciding petition for new trial was entitled to deference because it was based on factual findings, including credibility determination).  The

habeas court found credible trial counsel's testimony that he explained to Brown the advantages and disadvantages of testifying at the suppression hearing.  See Brown, 2013 WL 6171366 at *4; Habeas Tr. at 27–29, 78.  The habeas court found credible trial counsel's testimony that he prepared Brown to testify at trial.  See Brown, 2013 WL 6171366, at *4 (crediting "the testimony of defense counsel that he reasonably prepared questions for the petitioner and met with the petitioner to prepare and discuss his potential testimony").  The habeas court also found credible trial counsel's statement that he was unaware of Brown's allegations of abuse by the police until cross-examination.  See id. at *3.  Without knowledge of the alleged abuse, trial counsel could not have prepared Brown to testify about the abuse at the suppression hearing or even recommend that he testify to reveal the alleged abuse.

Although the expert witness offered alternative approaches that counsel could have followed, see Habeas Tr. at 108–10, the existence of an alternative approach does not demonstrate deficient performance, see United States v. Chaudhry, 52 F. App'x 540, 542 (2d Cir. 2002) (holding that affidavit from another attorney stating "that a more competent attorney would have gotten a better deal for" client was insufficient to show that "counsel made any serious errors that fell below professional norms."); Sears v. United States, 791 F. Supp. 950, 955 (N.D.N.Y. 1992) ("Even if another lawyer would have pursued a different, more effective tack, this court has no basis to conclude that counsel's performance was so egregious that he was not an effective counsel within the meaning of the Sixth Amendment.").  Brown did not identify any information that trial counsel failed to elicit because Brown was not properly prepared and that would have produced a more favorable outcome at trial.  See State Case Amended Petition ¶¶ 10–

18

17.  Thus, Brown also failed to establish the prejudice prong of the <u>Strickland</u> standard. This court concludes that the state court's determination on the second ineffective assistance of counsel claim—failure to prepare Brown properly to testify—is a reasonable application of Supreme Court law.

The habeas court did not separately address Brown's third claim—that trial counsel was ineffective for failing to object when Brown was questioned about his letter to the judge.  Trial counsel testified that he chose not to object for strategic reasons, and because he believed the statement was admissible via the hearsay exception for an admission against interest.  <u>See</u> Habeas Tr. at 40–41.  Criminal defendants, like all other witnesses, may have their credibility challenged when they testify.  <u>See</u> <u>Portuondo v. Agard</u>, 529 U.S. 61, 69 (2000).  Absent any evidence that the letter was improperly used, there is no basis for a conclusion that trial counsel's failure to object was deficient performance or that the use of the letter prejudiced Brown.  <u>See</u> <u>United States v. Arena</u>, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make meritless argument does not amount to ineffective assistance."), <u>cert. denied</u>, 531 U.S. 811 (2000).[1]

This court reviews the actions of the state court based on the record before the state court.  <u>Pinholster</u>, 131 S. Ct. at 1398–99.  To grant a federal habeas petition, the district court must find that the state court decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any

---

[1] The state habeas court did address Brown's fourth state claim, that trial counsel should have introduced his letter as a full exhibit at trial.  In considering the fourth state claim, the habeas court assumed that the letter was properly used for impeachment.  The court noted that the letter was important for what it did not contain.  There was no reference to abuse or coercion by the police, no mention of an alibi and no indication that Brown did not know the contents of the statement until he was shown a copy by counsel.  <u>Brown</u>, 2013 WL 6171366, at *5.  Brown does not include the fourth claim of ineffective assistance of counsel from his state habeas petition in this action.

possibility of fairminded disagreement." Harrington, 562 U.S. at 103.  Brown has not

met this burden.  The court has concluded that, with regard to each claim of ineffective

assistance of counsel, the state court reasonably applied Supreme Court law to the

evidence before it.  Accordingly, Brown's Petition for Writ of Habeas Corpus cannot be

granted on the ground that counsel was ineffective.

      B.      Prosecutorial Misconduct

      In this action, Brown challenges the prosecutor's use of the letter as prosecutorial

misconduct.  He did not include this claim in his state habeas petition.  All references to

the letter in the State Case Amended Petition related to his ineffective assistance of

counsel claim.  See State Case Amended Petition at 36.

      Before filing a petition for writ of habeas corpus in federal court, the petitioner

must properly exhaust his state court remedies.  See O'Sullivan v. Boerckel, 526 U.S.

838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A).  The Second Circuit requires the district

court to conduct a two-part inquiry.  First, a petitioner must present the factual and legal

bases of his federal claim to the highest state court capable of reviewing it.  Second, he

must have utilized all available means to secure appellate review of his claims.  See

Galdamez v. Keane, 394 F.3d 68, 73–74 (2d Cir.), cert. denied, 544 U.S. 1025 (2005).

Brown failed to raise this claim on direct appeal, see Brief for Defendant–Appellant

(Resp't's Mem. App. C, Doc. No. 11-3 at 2–20), or in his state habeas petition, see

State Case Amended Petition.  Thus, the claim is unexhausted, and the court cannot

grant the Petition on this ground.  See Aparicio v. Artuz, 269 F.3d 78, 90 n.5 (2d Cir.

2001).

      However, the federal court is permitted to deny relief on an unexhausted claim.

See 28 U.S.C. § 2254(b)(2).  The State of Connecticut contends that the claim should be denied and asks the court to consider the prosecutorial misconduct claim pursuant to section 2254(b)(2).  See Resp't's Mem. at 48–50.

Prosecutorial misconduct does not give rise to a constitutional violation unless the misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  For example, the fact that the prosecutor's remarks may have been undesirable, or even universally condemned, does not rise to the level of a constitutional violation unless the trial also was unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  The petitioner must identify specific instances of "egregious misconduct," DeChristoforo, 416 U.S. at 647–48, that show he was substantially prejudiced.  United States v. Thomas, 377 F.3d 232, 244 (2d Cir. 2004); see also DeChristoforo, 416 U.S. at 647–48 (distinguishing between "ordinary trial error of a prosecutor" and "egregious misconduct . . . amount[ing] to a denial of constitutional due process").  The court reviews a claim of prosecutorial misconduct in context and evaluates the probable effect of the prosecutor's actions on the trier of fact's ability to judge the evidence fairly.  See United States v. Young, 470 U.S. 1, 12 (1985).  In reviewing prosecutorial misconduct claims, the court is mindful that "because the Darden standard is a very general one," courts have "more leeway . . . in reaching outcomes in case-by-case determinations . . . ." Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012).

The alleged misconduct is the prosecutor's use for impeachment purposes of the letter during cross-examination of Brown.  Brown states that the letter "had nothing to do with the case," and suggests that the letter was prejudicial because it gave jurors the

sense that Brown "wanted to appeal to jurors' emotions to purge myself." See Petition at 9.  In Connecticut courts, "[e]vidence is admissible only if it is relevant." McBurney v. Paquin, 302 Conn. 359, 378 (2011) (internal quotation marks omitted).  That said, "[e]vidence is not rendered inadmissible because it is not conclusive.  All that is required is that the evidence tend to support a relevant fact even to a slight degree." State v. Allen, 289 Conn. 550, 562 (2008) (internal quotation marks omitted).

Brown's letter is addressed directly to the pretrial judge.  See Letter (Resp't's Mem. App. J, Doc. No. 11-10 at 64–65).  The State of Connecticut argues that the letter was properly used for impeachment purposes, to cast doubt on Brown's testimony implying that, while Brown (1) had an alibi and (2) had been physically abused by police officers to obtain a false confession, Brown did not reveal either of these pieces of information before trial because Brown did not know any way to alert authorities to these facts.  See Resp't's Mem. at 44–45.  On cross examination, Brown had testified that he did not reveal his alibi earlier in part because he did not know the proper procedure for doing so.  See Trial Tr. (Jan. 21, 2010) at 105.  When asked why he did not report physical abuse by police officers earlier, he similarly stated, "They cops, how I'm gonna complain?"  See id. at 90.

The State of Connecticut argues that the letter serves as evidence that Brown did know how to alert authorities, and that questioning regarding the letter was thus proper as a form of impeachment to suggest that the alibi and abuse were likely recent fabrications.  See id. at 45–46.  While the fact of Brown having sent a letter to the pretrial judge is not "conclusive" on the issue of whether Brown knew how to alert authorities to an alibi and to abuse, the fact of Brown sending such a letter nonetheless

meets the "low hurdle" of the relevance requirement.  See Allen, 289 Conn. at 562.

Even "[r]elevant evidence is excluded [ ] when its probative value is outweighed by the

danger of unfair prejudice."  Id. (internal quotation marks omitted).  The prejudice Brown

claims is that the letter would give the impression that Brown wanted to appeal to

emotion and to purge himself.  See Petition at 9.  This court does not find that any such

prejudicial effect outweighed the probative effect of impeaching Brown's testimony.

Even if the prejudicial value had slightly outweighed the probative value of testimony on

Brown's letter, the prosecution's eliciting of the testimony without objection from defense

counsel certainly would not rise to the level of egregious misconduct.

Furthermore, Brown cites no authority precluding the use of the letter for

impeachment purposes.  See Petition at 9.  Because a criminal defendant, like any

other witness, is subject to cross-examination to impeach credibility, see Agard, 529

U.S. at 69, the prosecutor's use of the letter to impeach Brown did not render his trial

unfair.  Thus, habeas relief is not warranted on this ground.

## V.    CONCLUSION

The Petition for Writ of Habeas Corpus (**Doc. No. 1**) is **DENIED**.  The court

concludes that an appeal of this Ruling would not be taken in good faith.  Thus, a

certificate of appealability will not issue.

The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 1st day of December 2016 at New Haven, Connecticut.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge